IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Quirino Torres Sanchez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 26 C 6003 |
| | ) | |
| | ) | |
| Samuel Olson, Chicago Field | ) | |
| Office Director, U.S. | ) | |
| Immigration and Customs | ) | |
| Enforcement, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

Petitioner Quirino Torres Sanchez seeks *habeas corpus* relief from his present immigration detention. While his grounds for relief originally spanned several much-contested issues in immigration law, the parties have narrowed the case down to one question: whether Torres Sanchez's mandatory detention under 8 U.S.C. § 1226(c), as amended by the Laken Riley Act, offends his right to due process under the Fifth Amendment. It does, and I grant his petition.

1

**I.**

Torres Sanchez is a native and citizen of Mexico. He entered the United States around twenty-five years ago and has remained here since. Before his detention, he was residing in Blue Island, Illinois, with his citizen wife and children. On April 21, 2026, officers from the Palos Heights, Illinois Police Department arrested Torres Sanchez and charged him with theft under 720 ILCS 5/16-1.[1]

On May 20, 2026, agents with Immigration and Customs Enforcement detained Torres Sanchez in Chicago pursuant to an immigration warrant. ECF 9-2 at 4. The agents took Torres Sanchez to the Broadview Detention Center, which is within the Northern District of Illinois, and he filed his petition for a writ of *habeas corpus* while he was detained there, although respondents have since moved him to the Clay County Jail in Brazil, Indiana.

Torres Sanchez originally asserted that he had been arrested— and given the frequency of such occurrences, he had reason to believe so—without a warrant, thus making him a class member

---

[1] Respondents originally contended, based on the information on Torres Sanchez's RAP sheet, that he had been charged with the theft of a firearm. Torres Sanchez has produced the police report from his arrest, which clarifies that the subject of the theft was around $200 worth of material taken from a construction site— Torres Sanchez suggests that it was "1-inch pieces of pipe." ECF 10 at 3.

protected by a settlement prohibiting such arrests. *See Castañon-Nava v. DHS*, 161 F.4th 1048 (7th Cir. 2025). But in the light of the warrant Respondents attached to their response to his petition, Torres Sanchez has conceded that *Castañon-Nava* affords him no relief. *See id.* at 1058. Torres Sanchez also asserted—again, because many immigrants have been detained on these lines—that he was impermissibly detained pursuant to 8 U.S.C. § 1225 instead of 8 U.S.C. § 1226. *See Solorzano-Pastrana v. Schmidt*, 2026 WL 1878643, at *2–*5 (E.D. Wis. June 30, 2026) (Joseph, M.J.) (surveying the current landscape of this issue in the Seventh Circuit). But respondents, if they once did, no longer attempt to justify Torres Sanchez's detention under Section 1225.[2] Instead, they point to Section 1226, and it is under that section that I rule on the petition.

## II.

Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed

---

[2] Respondents suggest in a footnote without developing that, if I were to rule against them on the Section 1226 issue, they may want to fall back on Section 1225. ECF 9 at 4 n.1. They may not, for the reasons stated in *Solorzano-Pastrana v. Schmidt*, 2026 WL 1878643, at *2–*5 (E.D. Wis. June 30, 2026) (espousing the reasoning embraced by most district courts across the country that noncitizens present in the United States are not subject to the detention provisions of Section 1225).

from the United States." It continues that, "Except as provided in subsection (c)," the Attorney General may grant the noncitizen bond or conditional parole. Subsection (c) previously prescribed mandatory detention for noncitizens convicted of a variety of serious offenses. In 2025, though, Congress passed the Laken Riley Act, Pub.L. 119-1, sec 236, § 2, 139 Stat. 3, 3 (2025), adding Subsection (c)(1)(E), which mandates detention of noncitizens who meet two requirements. The first is that the noncitizen be inadmissible under, *inter alia*, 8 U.S.C. § 1182(a)(6)(A) ("An alien present in the United States without being admitted or paroled...is inadmissible."). The second is that the noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" a variety of offenses, including "shoplifting" and "theft." 8 U.S.C. § 1226(c)(1)(E)(ii).

Torres Sanchez appears to concede that he is inadmissible by way of not having been admitted or paroled, meaning that he meets the requirement of Section 1226(c)(1)(E)(i). And he does not contest that he was arrested by the Palos Heights police for a theft offense, which means that he meets the requirements of Section 1226(c)(1)(E)(ii). His contention, rather, is that his mandatory detention without the benefit of a bond hearing violates his right to the due process of law under the Fifth Amendment to

the U.S. Constitution, meaning that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.

The Fifth Amendment's due process clause applies to all "persons" within the United States, including noncitizens, whether documented or undocumented, and applies to those held in immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). There is no gainsaying that Torres Sanchez, who resided in the United States for more than two decades, is among the persons to whom it applies. Protection of a person's physical freedom is at the heart of the amendment. *Id.* at 690. For that reason, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

### A.

Respondents defend Torres Sanchez's process-less detention by relying on *Demore v. Kim*, 538 U.S. 510 (2003), and a slew of older cases which in their aggregate stand for the principle, recited in *Demore*, that the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522

5

(citations omitted). But *Demore*, after the passage of Laken Riley, is inapposite.

The *Demore* Court considered a pre-amendment version of Section 1226(c) which mandated detention of noncitizens who had been convicted of one or more offenses which Congress had marked out as especially serious. *Id.* at 513, 517–21. The Court noted that Congress had made extensive findings regarding those noncitizen offenders' recidivism rates and reluctance to appear for their immigration proceedings. *Id.* at 518–520. And, given that deportations for serious criminal offenders were generally fast-tracked, the Court contemplated that those noncitizens' detentions would be short. *Id.* at 528–29. Most importantly, because the prior Section 1226(c) only applied to *convicted* noncitizens, the Court was writing against a background where every noncitizen in question would have already received the extensive process afforded by state or federal criminal proceedings, each more substantive than anything available in the immigration system.

I join several other district courts who have found that *Demore* does not announce the constitutionality of Section 1226(c)(1)(E). *See Peralta-Malla v. Mullin*, 2026 WL 1346325, at *3–*4 (S.D.N.Y. May 14, 2026) (collecting cases).

In the first place, as amended, Section 1226(c) mandates detention for noncitizens accused of crimes as minor as

shoplifting, and there is no accompanying Congressional finding that noncitizens accused of misdemeanor or summary offenses are especially dangerous or likely to avoid their immigration proceedings. *Alcantara Guerrero v. Wesling*, 2026 WL 931503, at *4 (D. Mass. Apr. 6, 2026) ("[T]he Laken Riley Act does not contain comparable legislative findings to support the proposition that people arrested for...any of the listed offenses pose a heightened danger to the community or a flight risk."); *Zadvydas*, 533 U.S. at 690-91 ("[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections.").

In the second place, noncitizens subject to detention under Section 1226(c)(1)(E) have as a rule not been convicted, meaning they are subject to removal only on standard inadmissibility grounds and subject, as well, to the delays that the recent surge in immigration enforcement has only aggravated.[3] *Zadvydas*, 533 U.S. at 691 ("In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such

---

[3] *See*, *e.g.*, Hamed Aleaziz, "Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down," *New York Times* (July 1, 2026), https://www.nytimes.com/2026/07/01/us/politics/ice-immigrant-arrests-surge.html.

as mental illness, that creates the danger.") (emphasis in original).

Third and most importantly, noncitizens detained under Section 1226(c)(1)(E) have not, like the petitioners considered in *Demore*, been afforded criminal process. This is no small distinction. The American legal system is exceptional in the procedural protections that it extends to criminal defendants, and a state or federal conviction is proof positive that more process has already been afforded than ever can be within the immigration system. An arrest, by contrast, entails zero process, and "[e]xtending *Demore* from convictions to unresolved accusations would expand the constitutional logic of mandatory detention beyond the setting the Supreme Court actually addressed." *Nosirov v. Rife*, 2026 WL 916602, at *7 (E.D. Penn. Apr. 1, 2026). Having found that *Demore* does not foreclose Torres Sanchez's challenge, I consider that challenge itself.

## B.

Courts balance three factors to determine whether a due process violation has occurred: "[F]irst, the private interest at stake; second, the risk of erroneous deprivation and the value, if any of additional procedural safeguards; and third, the government's countervailing interests." *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*,

424 U.S. 319, 335 (1976)). And due process will generally entail notice and a right to be heard before the deprivation of liberty or, if necessary, very shortly afterwards. *Mathews*, 424 U.S. at 333 ("The right to be heard before being condemned to suffer grievous loss of any kind...is a principle basic to our society.") (citations omitted).

All three *Mathews* factors favor Torres Sanchez. His interest in freedom from incarceration, at some distance from his home and family, is the most fundamental protected by the Fifth Amendment's due process clause. *Zadvydas*, 533 U.S. at 690. The risk of error here is substantial, given that there is literally no mechanism under Section 1226(c)(1)(E) to test whether Torres Sanchez was involved with any underlying criminal activity, let alone whether he poses a flight risk or a danger to the community. "The value of additional process is equally clear: a prompt bond hearing would permit a neutral decisionmaker to determine whether continued detention is actually necessary." *Nosirov*, 2026 WL 916602, at *7. And while the government has an interest in Torres Sanchez's attendance at further immigration proceedings, it has not shown— and, in truth, could not show—that its interests outweigh the minimal burden entailed by affording Torres Sanchez a bond hearing before an immigration judge. *Accord Doe v. Moniz*, 800 F. Supp. 3d 203, 217 (D. Mass. 2025).

**IV.**

I grant Torres Sanchez's petition and order the respondents to afford him a prompt bond hearing before an immigration judge. I likewise order, in line with Torres Sanchez's request, that respondents file a status report within six business days of the date of this memorandum certifying compliance with it. That report shall include if and when the bond hearing occurred, if bond was granted, and, if bond was denied, the reasons for the denial.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge
Dated: July 9, 2026

10